UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY MENOVCIK,

        Plaintiff,

v.

        Case No. 09-12096
        Honorable Julian Abele Cook, Jr.

BASF CORP.,

        Defendant.

ORDER

The Plaintiff in this civil litigation, Gregory Menovcik, has accused his former employer, BASF Corporation ("BASF"), of wrongfully terminating his employment in violation of existing federal and state law. A jury trial is scheduled to begin on December 6, 2010. Following a decision by the Court in which BASF's motion for summary judgment was granted in part, Menovcik's remaining claims are that his employer had (1) unlawfully terminated him in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140; (2) discharged him from the employment rolls because of age, in violation of the Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101, et seq.; (3) breached a mutually agreed upon contract; and (4) defamed him by mischaracterizing the reasons for his termination to third persons.

Currently before the Court are the following applications for relief by BASF: (1) motion *in limine* to exclude evidence of Menovcik's non-economic damages; and (2) motion for leave to depose a non-party witness by video-conference.

I.

Initially, BASF requests that Menovcik be precluded from presenting evidence of alleged

1

non-economic damages because of his failure to comply with discovery obligations under Federal Rule of Civil Procedure 26.

On July 17, 2009, BASF served Menovcik with a request for the production of documents pursuant to Federal Rule of Civil Procedure 34, which included a request that he "[p]lease produce signed medi[c]al records authorizations, copies of which are attached, for every person, physician, counselor or entity from whom, or which, you sought or received medical, psychological, psychiatric or mental health treatment of any kind during the last five (5) years." (Def.'s Mot. to Exclude at Ex. 2, p. 4). On August 5, 2009, Menovcik served BASF with his Rule 26 disclosures, which included a statement that he intended to seek non-economic damages for "emotional distress, mental anguish, embarrassment, and humiliation occasioned by [the] Defendant's wrongful acts." (*Id.* at Ex. 1, p. 12). Approximately one month later, Menovcik responded to BASF's request for the production of documents, stating that he (1) had neither sought nor received any psychological, psychiatric, or mental health treatment during the relevant time period; and (2) objected to the request for his medical records for the last five years as being "overly broad, unduly burdensome, not reasonably designed to discover information relevant to either parties' claims or defenses, and not reasonably calculated to lead to the discovery of admissible evidence." (*Id.* at Ex. 2, p. 4). Five days later, BASF sent a letter to him in which it requested that he "either agree to sign the medical [authorization forms] or agree not to seek any damages with respect to any alleged mental, physical or emotional effects of his dismissal." (*Id.* at Ex. 3). Menovcik did not respond to this letter. However, in response to a later interrogatory in which BASF sought to obtain a specification of the claimed damages, he confirmed his continued intention to seek the non-economic damages in question.

Despite having known of Menovcik's stated objections since September of 2009, and despite BASF's failure to seek a court order that, if granted, would compel him to sign the requested authorizations, BASF now seeks to entirely preclude its former employee from presenting any evidence of his alleged non-economic damages.

In support of its request, BASF cites a number of cases and federal rules which ostensibly mandate or at least authorize the exclusion of the challenged evidence. However, an examination of these cases reveals that they are readily distinguishable from the facts in this case. Moreover, the cited Rules are inapplicable.

BASF contends that Menovcik's refusal to sign the medical authorization forms constitutes a violation of Federal Rule of Civil Procedure 26, which subjects an alleged violator to the imposition of sanctions under Rule 37(c)(1). However, this Rule details the possible penalties for the failure of a party to comply with discovery obligations under Rules 26(a) and (e), neither of which is applicable to the case at bar. Rule 26(a) requires a party to disclose, without awaiting a discovery request, only the following categories of information: (1) names and contact information for persons who are likely to have discoverable information that the disclosing party may use to support its claims or defenses; (2) copies or descriptions of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses; (3) a computation of each category of damages claimed; (4) any insurance agreement under which an insurer may be liable to satisfy all or part of a possible judgment; and (5) the identity of, and written report by, any proposed expert witness. Fed. R. Civ. P. 26(a).

Although BASF may be correct in asserting that Rule 37(c)(1) "requires absolute

3

compliance with Rule 26(a) [and] mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified," *Roberts v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (citation and internal quotation marks omitted), this argument misses the mark because Menovcik was under no obligation pursuant to Rule 26(a) to produce the requested forms. Thus, sanctions pursuant to Rule 37(c) - which precludes a party from using information or witness testimony if the party was obligated to disclose that information or witness's identity "as required by Rule 26(a) or 26(e)"[1] – would be entirely inappropriate here.

BASF also submits that, pursuant to Rule 37(b)(2)(A)(ii), the Court is empowered to enter an order "prohibiting [a] disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." However, Rule 37(b) deals with sanctions for disobedience to a court order regarding discovery. Despite having over a year to do so, BASF never filed a motion in which it requested this Court to issue any such order. Therefore, sanctions under this Rule would also be entirely inappropriate.

Finally, BASF cites two Sixth Circuit cases in which the court affirmed sanctions ordered pursuant to Rule 37(b) for failure to comply with court orders and directives. *See Mullins v. Toyota Motor Mfg.*, 28 Fed. Appx. 479 (6th Cir. 2002); *Hayes-Williams v. City of Cleveland*, No. 01-5600, 2000 WL 84464 (6th Cir. Jan. 29, 2000). As Menovcik correctly notes, these cases are readily distinguishable from the case at bar. In *Mullins*, the defendant sought - and the court granted - three separate orders which compelled the plaintiff to execute a medical authorization form. In defiance

---

[1] Rule 26(e) refers to an obligation to supplement earlier disclosures or discovery responses if the party later learns that the disclosed information was materially incorrect or incomplete. This Rule is not implicated on the facts here.

4

of the court's repeated orders, and despite being warned that the case would be dismissed if he failed to comply, the plaintiff refused to execute the form and the case was dismissed. In *Hayes-Williams*, the plaintiff - who sought damages for mental anguish and humiliation allegedly caused by the defendant's hostile work environment - had stipulated that she would appear for a psychological examination, but did not do so. Upon assurance by her counsel that she would appear for the next exam, the court denied the defendant's request for an order which compelled her appearance. But in doing so, the court warned the plaintiff's counsel that it may disallow her testimony relating to psychological damages if she failed to appear once again. Despite appearing for a psychological examination, she refused to cooperate. Deeming her refusal to have been "intentional, deliberate and egregious," the court disallowed the challenged testimony. Unlike the situations in *Hayes-Williams* and *Mullins*, Menovcik has not acted contrary to any agreement, court order, or warning. Menovcik never agreed to sign the authorizations, and BASF never sought an order or warning from the Court.

BASF argues that Menovcik has "placed his mental state directly at issue by declaring multiple times that he was seeking non-economic damages including emotional and mental distress and anguish." (Def.'s Mot. to Exclude at 4). Without Menovcik's medical records, BASF contends that it cannot defend against these claims. However, Menovcik has stated that (1) he never sought treatment of any kind relating to his mental health; and (2) evidence regarding any medical treatment he may have had in the past five years is not, in his judgment, material to his claim for non-economic damages. In support of the latter proposition, Menovcik states that he intends to present no medical testimony and cites to Michigan case law which establishes that non-economic damages for mental anguish are available to ELCRA claimants even if no medical testimony is

5

given. *See Campbell v. Dep't of Human Servs.*, 780 N.W.2d 586, 596 (Mich. App. 2009) (citation and internal quotation marks omitted) ("Contrary to defendant's contention that plaintiff had to present objective evidence of her emotional damages, plaintiff's testimony regarding her own subjective feelings was sufficient to support an award of noneconomic damages. Victims of discrimination may recover for the humiliation, embarrassment, disappointment and other forms of mental anguish resulting from the discrimination, and medical testimony substantiating the claim is not required."). If medical testimony were a necessary component of Menovcik's ELCRA claim or if he intended to bolster his claim by proffering medical testimony, the situation would be quite different. However, because medical testimony is neither necessary nor forthcoming, BASF has not demonstrated that it will be prejudiced by not having access to these records.

The Court will not take the drastic step of precluding any testimony regarding Menovcik's alleged non-economic damages, especially when (1) BASF has failed to take any earlier action to request the assistance of the Court in resolving this discovery dispute through the readily available mechanisms; and (2) BASF has not shown that the requested records are relevant or necessary to its defense. Therefore, and for the reasons that have been set forth above, the Court denies BASF's motion to exclude this evidence.[2]

II.

The Court now turns to BASF's motion for leave to depose a non-party witness by video-conference. The witness in question, Patrick Mormile, is a former employee of BASF and co-worker of Menovcik. He left his position with BASF in the spring of 2010 and now lives and works

---

[2] Menovcik will, of course, be precluded from attempting to introduce any medical evidence at trial.

just outside of Bangkok, Thailand. Both parties state that Mormile made initial reports about Menovcik's conduct that led to an investigation which, in turn, purportedly led to the termination of his employment with BASF. Mormile was deposed during the discovery phase of this lawsuit. However, BASF proclaims that this pretrial discovery examination is insufficient because "he was only questioned by plaintiff's counsel. BASF did not ask any questions and plaintiff's questioning was obviously not intended to create a favorable record for BASF." (Def.'s Mot. for Leave to Depose at 6 n.1). BASF now wishes to depose Mormile again so that his deposition testimony may be used as a substitute for open-court testimony at trial. The proposed deposition would occur with (1) Mormile appearing by video-conference from Thailand; (2) the attorney for Menovcik appearing by video-conference from Colorado; and (3) the counsel for BASF as well as the court reporter appearing by video-conference from Michigan.

Menovcik opposes this proposed deposition because (1) an oath administered from Michigan would have no legal efficacy in Thailand; (2) Mormile's documented antipathy for him renders safeguards against perjury and possible off-camera meddling by third parties particularly important; (3) he would be defenseless against any "possible personal vendetta" due to the unavailability of sanctions for perjury under Thai law; and (4) the previously taken deposition provides an adequate substitute for Mormile's open-court testimony.

The Federal Rules of Civil Procedure allow a deposition to be taken in a foreign country under certain enumerated circumstances:

> A deposition may be taken in a foreign country:
> (A) under an applicable treaty or convention;
> (B) under a letter of request, whether or not captioned a "letter rogatory";
> (C) on notice, before a person authorized to administer oaths either by federal law or by the law in the place of examination; or

> (D) before a person commissioned by the court to administer any
> necessary oath and take testimony.

Fed. R. Civ. P. 28(b)(1).

BASF makes no attempt to analyze which, if any, of these circumstances is applicable here. Rather, BASF cites Rule 28(b)(1) for the proposition that depositions may be taken in foreign countries without noting that the operation of this Rule has limitations which do not appear to be satisfied here. (*See* Def.'s Mot. for Leave to Depose at 5) ("[T]he Federal Rules of Civil Procedure permit a party to take a deposition in a foreign country: 'A deposition may be taken in a foreign country.' Fed. R. Civ. P. 28(b)(1)."). BASF makes no attempt to analyze whether (1) a relevant treaty or convention is applicable to this case (i.e., a treaty akin to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters); (2) a letter of request should be issued; or (3) a noticed deposition before a person who is authorized to administer oaths would be legal under Thai law. Thus, the only possible relevant circumstance is a deposition before a person who has been commissioned by the court, Rule 28(b)(1)(D).

Under the present circumstances, Rule 28(b)(1)(D) must be considered in conjunction with Rule 30(b)(4), which addresses the taking of depositions by remote means:

> The parties may stipulate - or the court may on motion order - that a deposition be taken by telephone or other remote means. For the purpose of this rule and Rules 28(a), 37(a)(2), and 37(b)(1), the deposition takes place where the deponent answers the questions.

Fed. R. Civ. P. 30(b)(4). Courts have uniformly held that the last sentence of Rule 30(b)(4) means that the deposition is "taken" where the witness - not the parties or their counsel - is located. *E.g.*, *Phye v. Thill*, No. 06-1309-MLP, 2007 WL 2681106, at *1 (D. Kan. Sept. 7, 2007) ("Case law interpreting the [Federal Rules regarding remote and foreign depositions] . . . unequivocally holds

that a telephonic deposition is considered 'taken' at the location of the witness, not the location of the parties' attorneys."); *Loucas G. Matsas Salvage & Towage Mar. Co. v. M/T Cold Spring I*, Nos. CIV.A. 96-0621, CIV.A 96-0931, 1997 WL 102491, at *2 (E.D. La. Mar. 5, 1997) ("[A] telephone deposition is 'taken' where the witness is located, not where the parties' attorneys are located.").

Furthermore, the word "before" in Rule 28(b)(1)(D) requires that the witness and the person who administers the oath be in the same place. *E.g.*, *Phye*, 2007 WL 2681106, at *1 (quoting *Loucas G. Matsas Salvage & Towage Mar. Co.*, 1997 WL 102491, at *2) ("Case law on this issue, while not abundant, is clear. 'Rule 28(b) specifically requires that the witness testify "before" an official, i.e., at the same place as the official, and that the official be authorized to administer oaths where the examination is held.'"); *see also Advani Enters., Inc. v. Underwriters at Lloyds*, No. 95 Civ. 4864(CSH), 2000 WL 1568255, at *3 (S.D.N.Y. Oct. 19, 2000) ("The plaintiff here must, therefore, provide to this Court a proposal for compliance with Rule 28(b), which will include necessarily a means by which to place the deponents under oath by a person located in Egypt. Fulfillment of this requirement is a necessary and sufficient condition for the valid telephonic deposition of these two witnesses."); *United States v. Ruiz Castro*, 92 F.3d 1519, 1533 (10th Cir. 1996), *overruled on other grounds by United States v. Flowers*, 464 F.3d 1127 (10th Cir. 2006) (denying motion for leave to depose by telephone where its proponent "neither referenced any treaties nor did he state that [the proposed deponent] would testify 'before' a person authorized to administer oaths as described in Rule 28(b))").[3]

---

[3] In a recent case, the Eastern District of Tennessee allowed a deposition into evidence where the oath had been administered telephonically. *Akins v. Mason*, No. 06-248, 2008 WL 4646142 (E.D. Tenn. Oct. 17, 2008). However, the court, in forgiving the procedural flaws, relied on several factors that are not presented here; namely, (1) the opposing party's counsel was present with the deponent and thus "was able to directly observe the witness and ensure that

Because BASF has made no apparent effort to comply with the procedural requirements of Rules 28 and 30, the Court must, and does, deny - without prejudice - the motion for leave to depose Mormile by video-conference. BASF is free to make its request again if it is able to supplement its request with proposed procedures that would ensure that the requirements of Rule 28(b) are satisfied.[4]

III.

For the reasons that have been set forth above, the Court (1) denies BASF's motion to exclude evidence of Menovcik's non-economic damages; and (2) denies BASF's motion for leave to depose a non-party witness by video-conference.

IT IS SO ORDERED.

Dated: November 23, 2010  s/Julian Abele Cook, Jr.
Detroit, Michigan  JULIAN ABELE COOK, JR.
United States District Court Judge

---

the witness was not receiving coaching or otherwise proceeding" improperly; (2) there was no evidence that the opposing party was "in some way prejudiced by the remote presence of the court reporter;" and (3) because all parties were located in the United States, the issues addressed by courts that did not allow remote administration of an oath to a deponent in a foreign country were not implicated. Thus, the adoption of *Akins* would not be proper here.

[4] The Court is aware that the short amount of time that remains until the trial date may render this impossible. However, BASF has been aware of Mormile's relocation to Thailand since last spring, yet made no apparent effort to seek leave to depose him by video-conference until November 12th - just over three weeks prior to the scheduled date of trial. BASF protests, asserting that Menovcik never made any objection to its proposed teleconference procedure until November 8th. However, BASF does not explain why it failed to seek Menovcik's stipulation to forgo the requirement that the deposition be taken "before" an officer appointed or designated under Rule 28. *See* Fed. R. Civ. P. 30(b)(5)(A) ("Unless the parties stipulate otherwise, a deposition must be conducted before an officer appointed or designated under Rule 28.").

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on November 23, 2010.

                                                s/ Kay Doaks
                                                Case Manager